Dominick SCIBETTA, Petitioner,

v.

UNITED STATES of America, Respondent.

Civil Action No. 97–2633 (MLC).

United States District Court, D. New Jersey.

Nov. 20, 1998.

Jerome A. Ballarotto, Trenton, NJ, for Petitioner.

Laura J. Kaplan, Asst. U.S. Atty., U.S. Attorney's office, Newark, NJ, for Respondent.

COOPER, District Judge.

This matter comes before the Court on the motion of *pro se* petitioner Dominick Scibetta to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. As set forth in this Memorandum Opinion, the Court is of the view that defendant has presented good grounds for the Court to conclude that his sentence was calculated improperly under the Guidelines, and that petitioner has met his burden of establishing ineffective assistance of counsel limited to that issue.

For this reason, the Court will appoint counsel to represent petitioner in this proceeding, and will afford the parties an opportunity to address the sentencing issue which is discussed and analyzed in this Memorandum Opinion. No order adjudicating the matter will be entered until the parties have had an opportunity to present their further arguments to the Court.

## BACKGROUND

Petitioner and three co-defendants were indicted in a one-count Indictment filed on September 7, 1995. The Indictment charged that on or about November 4, 1991, at Union City, New Jersey, the defendants conspired to obstruct, delay and affect commerce by robbery, in violation of 18 U.S.C. § 1951, a Hobbs Act offense. He was convicted by jury verdict rendered on February 12, 1996.[1]

Petitioner received a sentence of 34 months imprisonment and three years of supervised release, with waiver of any fine. The sentence was within the Guideline range of 33 to 41 months, as calculated in the Presentence Investigation Report ("PSR"), which was approved by the Court without objection by either party. (Sent. Hr'g Tr. at 2–3, 11–12.)[2] That calculation was based upon Section 2B3.1(a) of the United States Sentencing Guidelines ("USSG" or "Guidelines"), which assigned a base offense level of 20, with no specific offense or other adjustments, and a criminal history category of I. (PSR ¶¶ 31–41, 44, 65.)

■ Petitioner filed a timely appeal of his conviction and sentence, but the appeal was not perfected and was administratively dismissed by consent on August 28, 1996. Petitioner timely filed the present motion under 28 U.S.C. § 2255 on May 13, 1997.[3] The

1. The trial also resulted in a guilty verdict against defendant James Donato. Mr. Donato was similarly sentenced and appealed, but like petitioner he did not perfect his appeal and the appeal was dismissed. He filed no motion under 28 U.S.C. § 2255. The jury was unable to reach a unanimous verdict as to the other two defendants, and we declared a mistrial. Prior to the retrial of those defendants, they entered into plea agreements, pled guilty and were sentenced. Neither of them appealed or filed a § 2255 motion.

2. In addition to the § 2255 motion filed herein, which we will cite as Petition ("Pet."), the record in this matter includes the following: (1) Government's Answer and Memorandum in Opposition, with exhibits ("Gov.Br."); (2) Petitioner's Rebut-

tal and Memorandum ("Pet.Br."); (3) Indictment filed 9–7–95; (4) Presentence Investigation Report dated 4–23–96 ("PSR"); (5) Transcript of Sentencing Hearing dated 6–6–96 ("Sent. Hr'g Tr."); (6) Judgment of Conviction filed 6–20–96; (7) Notice of Appeal filed 6–21–96; and (8) Administrative Order from the Court of Appeals dismissing appeal filed 8–28–96.

3. A one-year time limit for filing a § 2254 or 2255 motion was introduced by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Title I, § 105, 110 Stat. 1220 (April 24, 1996). The Judgment of Conviction in this case was filed on June 20, 1996, and the direct appeal was dismissed on September 3, 1996. *See* note 2. The § 2255 motion was filed on May

motion presents no factual issues requiring an evidentiary hearing.[4]

## DISCUSSION

### A. Petitioner's Allegations

Section 2255 of Title 28, United States Code, provides that a prisoner in custody under sentence of a federal court may move before the court which imposed the sentence to vacate, correct, or set aside a sentence, on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The instant Petition seeks to vacate, set aside or correct the sentence on the ground that petitioner should have been sentenced under USSG § 2X1.1, which pertains to certain conspiracies, rather than under the robbery guideline, § 2B1.3. (Pet. ¶¶ 12A, 12B; Pet. Reply Br. at 6–11.) Petitioner asserts that if § 2X1.1 is applicable, then under the facts of his case he should have been entitled to a three-level downward adjustment pursuant to § 2X1.1(b)(2). (*Id.*) That Guideline section provides in pertinent part:

### PART X OTHER OFFENSES

### 1. CONSPIRACIES, ATTEMPTS, SOLICITATIONS

§ 2X1.1 *Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)*

(a) Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

(b) Specific Offense Characteristics

. . . .

(2) If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

USSG § 2X1.1.

Petitioner claims that the failure to raise this issue at sentencing and on appeal constituted ineffective assistance of counsel, entitling him to relief on his § 2255 motion. (Pet.¶ 12B.) Subsequent to filing the Petition Scibetta moved to amend to assert additional grounds for relief, but he withdrew most of those allegations during the briefing process and we have determined that the remaining issue lacks merit.[5] Accordingly, we will di-

---

13, 1997. Measured from either of the former dates, the motion was timely. *See* 18 U.S.C. § 2255 ("A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of (1) the date on which the judgment of conviction becomes final; . . . ."). Accordingly, the motion in this case was timely filed.

**4.** This Court is able to rule on petitioner's § 2255 motion without an evidentiary hearing. The motion, the record and the files, viewed in the light most favorable to petitioner, conclusively show that the petitioner is not entitled to relief other than that discussed herein. Under such circumstances an evidentiary hearing is not required. *See United States v. Friedland*, 83 F.3d 1531, 1542–43 (3d Cir.1996); *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir.1992); *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

**5.** The only ground of petitioner's proposed amended petition which he has not withdrawn pertains to his claim that a tape was provided to counsel for two of his co-defendants during the discovery period in preparation for their retrial after the hung jury as to them in the first trial. (The latter two defendants subsequently entered into plea agreements, so no later trial was conducted.) That tape was apparently not provided to petitioner or his counsel in discovery leading to the first trial, at which petitioner was convicted. (Pet. Br. at 11.) We have reviewed the transcript of the tape, and it is our firm conclusion that the failure to produce it does not meet the standard for granting a new trial on *Brady* grounds. *See Brady v. State of Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that suppression by prosecution of evidence favorable to the accused, upon request by the defense, violates due process where evidence is material either to guilt or punishment, irre-

**714**

rect our attention to the Guideline issue raised in the Petition.

## B. Procedural Issues

■■■ Petitioner is barred from collaterally attacking his sentence pursuant to 28 U.S.C. § 2255 so far as that attack is based upon alleged errors that could have been, but were not, raised on direct appeal. *See United States v. Frady*, 456 U.S. 152, 162–63, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). Defendant could have, but did not, raise on direct appeal his claim regarding the calculation of his sentence under the Guidelines. Therefore, that claim is procedurally barred. To avoid the bar, defendant must prove "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168, 102 S.Ct. 1584.

Where, as here, a petitioner presents an issue in his § 2255 motion which was not raised at trial or on direct appeal, the petitioner must show both cause and prejudice for his waiver to be excused. *United States v. Biberfeld*, 957 F.2d 98, 104 (3d Cir.1992) (citing *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)); *Essig*, 10 F.3d at 976–79 (interpreting *Frady* ); *United States v. Allen*, 16 F.3d 377, 378 (10th Cir.1994) (applying cause and prejudice standard).

■■■ "[C]ause under the cause and prejudice test must be something external to the petitioner that cannot be fairly attributable to him...." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In order to show prejudice, a petitioner "must show that the trial judge's error did more than create a possibility of

prejudice: the error must be shown to have 'worked to his actual and substantial disadvantage.'" *Henry v. United States*, 913 F.Supp. 334, 336 (M.D.Pa.) (quoting *O'Halloran v. Ryan*, 704 F.Supp. 70, 74 (E.D.Pa. 1989)), *aff'd*, 96 F.3d 1435 (3d Cir.1996).

■■ A petitioner need not, however, demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel initially in a § 2255 motion. The Third Circuit has clearly stated its preference that such claims be addressed in the first instance by the district court under a § 2255 motion. *See United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.1994); *United States v. DeRewal*, 10 F.3d 100, 103–04 (3d Cir.1993), *cert. denied*, 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994); *see also Hernandez v. United States*, No. 94–60, 1998 WL 554942 at *4 (D.Del. Aug. 13, 1998) (recognizing that Third Circuit has stated that § 2255 is "the proper and indeed preferred vehicle for challenging ineffective assistance of counsel"); *United States v. Reed*, No. 96–6425, 1997 WL 117029 at *3 (E.D.Pa. Mar.11, 1997) (same). Petitioner here asserts that the alleged error in sentencing was caused by ineffective assistance of counsel. (Pet.¶ 12B.) This argument requires that the Court analyze both the underlying claim, and the issue of whether counsel was ineffective and whether that failure was prejudicial. *See, e.g., United States v. Abbott*, 975 F.Supp. 703 (E.D.Pa.1997) (discussing and analyzing procedurally barred issues on that basis).

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective counsel." *Day*, 969 F.2d at 42 (quoting *Strickland v. Wash-*

spective of the good faith of the prosecution); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (*Brady* rule modified to require prosecutor to disclose exculpatory evidence even where there has not been a request for information by the defense); *see also United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (finding that a defendant is entitled to a new trial where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceedings would have been different. A reasonable probability is [defined as] a probability sufficient to undermine confidence in the outcome."). Accordingly, the motion to amend will be denied. *Cf. Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.) (motion to amend pleadings in civil case will be denied as futile where proposed claim would not withstand motion to dismiss), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

*ington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The Supreme Court in *Strickland* has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

█ The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.; see also* Reese v. *Fulcomer,* 946 F.2d 247, 256–57 (3d Cir.1991), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992); *United States v. Gray,* 878 F.2d 702, 710 (3d Cir. 1989).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Here petitioner alleges error in the application of the Guidelines by this Court which, if established, would give rise to "prejudice" as that term is defined, because it would have a substantial effect on the outcome of the sentencing. Therefore, we will turn to an analysis of that issue. The burden of proving a claim of ineffective assistance of counsel is on petitioner. *Gov't of the Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir. 1985).

## C. The Guideline Issue

It is undisputed that the 1995 version of the Guidelines was applicable in petitioner's case.[6] (U.S. Sentencing Guidelines Manual (Nov.1995); PSR ¶ 30.) The following discussion is in reference to the 1995 version except where otherwise noted.

The offense conduct in this case consisted of a conspiracy detected by an ongoing state investigation which involved wire interceptions and surveillance observations. (PSR ¶¶ 7–19.) The object of the conspiracy was to rob an employee of an entertainment ticket agency as he made his regular morning one-block walk from a bank to the agency with cash and tickets to be used in the day's business. (*Id.* ¶¶ 10–14.) The robbery was planned to take place on November 7, 1991. (*Id.* ¶ 11.) Petitioner went to that location on the two previous days, with various of the alleged co-conspirators, to watch the scene. (*Id.* ¶¶ 15, 16.) On the morning of the planned robbery, petitioner and the three co-defendants were at the appointed time and place, but did not carry out the robbery. (*Id.* ¶¶ 18, 19.) Local police conducted an uneventful traffic stop of the four individuals, several minutes after the planned robbery and several blocks away from the location, at

---

6. The 1995 version of the Guidelines was the appropriate one to use in this case, because it was the version in effect at the time of sentencing, and the version in effect at the time of the offense would not have provided a more favorable result. *See* USSG § 1B1.11, Policy Statement (court shall use Guidelines Manual in effect on date the defendant is sentenced, unless using that date rather than the date of offense would result in *ex post facto* violation).

a time when the intended victim had completed his walk to and from the bank without incident. Neither the local police nor the four individuals were made aware that the state police had knowledge of the conspiracy. (*Id.*) The state police investigation and surveillance continued for a lengthy period thereafter, although the planned robbery was never again attempted or carried out. Petitioner and his co-defendants were arrested in 1995 on the federal conspiracy charge contained in the Indictment, which had arisen as a result of the state police investigation. (*Id.* ¶¶ 19–23.)

Petitioner was convicted under the section of the Hobbs Act which provides in pertinent part that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, . . . [shall be punishable under this section].

18 U.S.C. § 1951(a). His offense level was calculated under USSG § 2B3.1, which contains the following provision:

### PART B - OFFENSES INVOLVING PROPERTY

. . . .

### 3. ROBBERY, EXTORTION, AND BLACKMAIL

§ 2B3.1 *Robbery*

(a) Base Offense Level: 20

USSG § 2B3.1(a). (PSR ¶ 31.) The Commentary to that section expressly states that it is applicable to offenses under 18 U.S.C. § 1951.[7] Likewise, the Guidelines Statutory Index correlates 18 U.S.C. § 1951 with USSG § 2B3.1. USSG App. A. Petitioner's sentence was not calculated to include any possible reduction under USSG § 2X1.1(b)(2), quoted above, for the specific offense characteristic generally allowing a three-level reduction for a conspiracy unless the described exceptions apply. (PSR ¶ 32.) In the course of the sentencing hearing nei-

ther the Court nor the parties considered whether Section 2X1.1(b)(2) might be applicable in petitioner's case. (Sent. Hr'g Tr. at 2–3, 11–12.)

Petitioner contends that his Hobbs Act robbery conspiracy conviction should have been sentenced under USSG § 2X1.1 rather than under § 2B1.3. Section 2X1.1, if applicable, would have given petitioner the opportunity to advocate that he was entitled to the three-point downward adjustment available under § 2X1.1(b)(2) for an incomplete conspiracy. In support of his argument petitioner cites a 1995 decision of the Court of Appeals for the Second Circuit and its progeny in that circuit and elsewhere, which we will discuss below. *See United States v. Amato*, 46 F.3d 1255 (2d Cir.1995). Our research has revealed no decision directly on point by our Court of Appeals for the Third Circuit, nor any contrary authority in any of the other circuits.

Based upon our analysis of the relevant portions of the Guidelines and existing case authority, we believe that the rule announced in *Amato* could well have been discovered and presented to this Court in the 1996 sentencing of petitioner. We are further of the view that if such an argument had been raised by defense counsel in connection with the sentencing, this Court would have followed the *Amato* rule in making the Guideline calculations in his case.

We must state at the outset that the legal issue now presented by petitioner is not without difficulty, and the courts have wrestled with the proper interpretation of the Guidelines in this respect. Thus, in this discussion we will examine *Amato* in the context of the relevant Guideline materials and prior and subsequent case history.

The defendants in *Amato*, like petitioner here, were convicted of conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951. *Amato*, 46 F.3d at 1257. The district court sentenced that Hobbs Act conspiracy under USSG § 2B3.1 (the Guideline for the substantive offense of

---

7. The relevant language of the Commentary is as follows:
   *Statutory Provisions:* 18 U.S.C. §§ 1951, 2113, USSG § 2B3.1, comment.2114, 2118(a), 2119. For additional statutory provision(s), *see* Appendix A (Statutory Index).

robbery), refusing to apply § 2X1.1 (applicable to certain conspiracies). Thus, defendants did not have an opportunity to receive the possible three-level decrease for an uncompleted conspiracy under § 2X1.1(b)(2), nor could the government seek the potential upward adjustments under § 2X1.1(a) for any intended offense conduct that could be established with reasonable certainty. *Id.* at 1259–62.

Defendants contended on appeal in *Amato* that the sentencing court, in applying § 2B3.1, should not have added two levels under § 2B3.1(b)(6) for amount of the loss, because the loss was merely intended and not realized. *Id.* Defendants argued that unlike § 2X1.1(a), which clearly allowed enhancement for intended but unrealized loss, the loss enhancement under § 2B3.1 was available only when loss had actually occurred. The Court of Appeals agreed with that interpretation of § 2B3.1, but set aside the sentence on different grounds. The Court held that based upon its interpretation of Amendment 481 to the Guidelines, effective November, 1993, the district court should have sentenced the Hobbs Act robbery conspiracy conviction under Section 2X1.1 rather than under 2B1.3. *Id.* at 1261–63. Under that interpretation, the government would be able to argue in favor of upward adjustments based upon any intended offense conduct that could be established with reasonable certainty, and defendants could seek the three-level decrease for un-

completed conspiracy if warranted by the facts.[8] *Id.*

The holding in *Amato* represented a departure from the prior Second Circuit authority established in *United States v. Skowronski,* 968 F.2d 242, 249–50 (2d Cir.1992), which held that a conviction for robbery conspiracy under the Hobbs Act was to be sentenced under § 2B1.3 and not under § 2X1.1. The *Skowronski* decision had stated two reasons for so holding. First, the court observed that § 2X1.1, by its terms, is to be used only when the conspiracy offense is not covered by a specific offense guideline, such as in the case of a conviction under 18 U.S.C. § 371, the general conspiracy provision. *Id.* at 250–51. The Guidelines at that time contained a § 2E1.5, which expressly covered 18 U.S.C. § 1951, and instructed that for a Hobbs Act robbery offense, USSG § 2B3.1 was to be applied.[9] The *Skowronski* court concluded that "[s]ince § 2E1.5 . . . expressly covers § 1951, . . . that is the section of the Guidelines that controls the determination of the offense level of a defendant convicted of Hobbs Act conspiracy, and . . . § 2X1.1 does not apply." *Id.* at 250. The related reason articulated in that case was that if a section of the criminal law . expressly prohibits conspiracy (such as 18 U.S.C. § 1951) then the court would consider that conspiracy to be "expressly covered" by a guideline if the guideline expressly covered that statutory section, and therefore § 2X1.1 would not apply.[10] We will refer to the latter rationale as

---

8. The reversal of the sentence in *Amato* was accompanied with remand instructions that inasmuch as the offense conduct occurred before the effective date of the November, 1993 amendments, and the sentencing date occurred subsequently, the district court should calculate the sentence under the prior version as well, and select the result which would be more favorable to defendants. *Amato,* 46 F.3d at 1262; *see* USSG § 1B1.11, Policy Statement (court shall use Guidelines Manual in effect on date the defendant is sentenced, unless using that date rather than the date of offense would result in *ex post facto* violation).

9. That Guidelines section provided in its entirety:

*Hobbs Act Extortion or Robbery*
Apply § 2B3.1 (Robbery), § 2B3.2 (Extortion by Force or Threat of Injury or Serious Damage), § 2B3.3 (Blackmail and Similar Forms of Extortion), or § 2C1.1 (Offering, Giving, Soli-

citing, or Receiving a Bribe; Extortion Under Color of Official Right), as applicable.
*Commentary*
    *Statutory Provision:* 18 U.S.C. § 1951.
    USSG § 2E1.5 (effective Nov. 1, 1989, *see* USSG App. C, amend. 145).

10. The court in *Skowronski* stated this reasoning as follows:

    Section 2X1.1(c) instructs that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." We do not interpret this instruction, as it applies to conspiracies, to mean that the word "conspiracy" itself must appear in the "[ ]other" guideline to be applied; rather, we also consider conspiracy to be expressly covered by a given guideline if the guideline expressly covers a stated statutory section and that section expressly prohibits conspiracy. . . . Thus, where the statutory

the "offense language theory" for purposes of discussion here.

The court in *Amato* rejected the "offense language theory," stating that it viewed that discussion in *Skowronski* to have been merely "supportive reasoning, rather than basic justification, for treating Hobbs Act conspiracies under § 2B3.1, rather than § 2X1.1." *Amato*, 46 F.3d at 1261. Grappling with some of the difficulties inherent in applying the *Skowronski* approach, the *Amato* court declared that "the dilemma [was] solved by an intervening change in the text of the Guidelines," which deleted the former § 2E1.5 and thus in the court's view eliminated the "express" reference which had hitherto made § 2X1.1 inapplicable to Hobbs Act conspiracies. *Id.* In this manner the court was able to conclude that for sentences subject to the 1993 and later versions of the Guidelines, a Hobbs Act conspiracy should be sentenced under § 2X1.1, which in turn would refer to the guideline for the substantive offense with appropriate adjustments.[11] *Id.*

The 1992 *Skowronski* rule was of course applied in the Second Circuit before *Amato* was decided. *See United States v. Friedman*, 998 F.2d 53, 57 (2d Cir.1993); *see also United States v. Vasquez*, 791 F.Supp. 348, 351 (E.D.N.Y.1992) (decided prior to *Skowronski* but employing similar reasoning, citing *United States v. Koenig*, 952 F.2d 267, 272–73 (9th Cir.1991)). Similar holdings were reached in the other circuits having occasion to address the issue during that period. *See United States v. Demory*, No. 92–5685, 34 F.3d 1067, 1994 WL 421123 at *6–7 (4th Cir. Aug.12, 1994) (unpublished opinion); *United States v. Thomas*, 8 F.3d 1552, 1564–65 (11th Cir.1993). *But see United States v. Sturm*, 671 F.Supp. 79, 91 n. 12 (D.Mass.1987) (decided while the Guidelines were in circulation but before enactment; citing § 2X1.1 in discussion of an attempt under the Hobbs Act), *aff'd in relevant part*, 870 F.2d 769 (1st Cir.1989). The 1995 decision in *Amato* commenced a new phase in which its approach has prevailed to the present time. *See United States v. Goldberg*, No. 96–1676, 113 F.3d 1230, 1997 WL 218784 at *1–2 (2d Cir. May 2, 1997) (unpublished opinion); *United States v. Damico*, 99 F.3d 1431, 1436 n. 3 (7th Cir.1996); *United States v. Joost*, No. 95–2031, 94 F.3d 640, 1996 WL 480215 at *12 (1st Cir. Aug.7, 1996) (unpublished opinion); *United States v. Grelle*, No. 95–1547, 89 F.3d 824, 1996 WL 345962 at *3 (1st Cir. June 25, 1996); *United States v. Medina*, 74 F.3d 413, 415–16 (2d Cir.1996); *United States v. DiSomma*, No. 90–428, 1996 WL 517662 at *1–3 (S.D.N.Y. Sept.11, 1996) (unpublished opinion). *But see United States v. Molina*, 106 F.3d 1118 (2d Cir.1997) (apparently assuming without deciding that a conviction of conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a) should be sentenced under USSG § 2B3.1); *United States v. Hill*, No. 96–1315, 97 F.3d 1454, 1996 WL 511582 at *2 (7th Cir.1996) (same as *Molina*; however, facts in this case would clearly not have supported the three-level reduction under § 2X1.1(b)(2), so arguably any error in having used § 2B3.1 would be harmless); *but cf. United States v. Ellis*, No. 95–435–4, 1997 WL 297080 at *4

---

section defining the offense of conviction prohibits conspiracy, and that section is expressly covered by a particular guideline, the offense level provided by that guideline is controlling, and § 2X1.1 does not apply.

*Skowronski*, 968 F.2d at 250 (citation omitted).

**11.** The court in *Amato* expressed its holding on this point as follows:

> When *Skowronski* was decided [in 1992], § 2E1.5 of the Guidelines expressly referred Hobbs Act violations to various other guidelines, including § 2B3.1 for Hobbs Act robberies (and, by inference, Hobbs Act conspiracies). That provision, however, was deleted from the Guidelines. USSG App. C, amend. 481 (Nov. 1993). As noted above, § 2X1.1 covers con-

spiracies in all cases, except when "conspiracy is expressly covered by another offense guideline section." USSG § 2X1.1(c)(1). The deletion of § 2E1.5, with its crossreference to § 2B3.1, deletes the provision of the Guidelines that provided the "express" reference making § 2X1.1 inapplicable. With that provision gone, nothing remains in § 2B3.1 (Robbery) to suggest, much less "expressly" state, that it intends to cover conspiracies.

We conclude that this change in the text of the Guidelines requires a return to the problem decided in *Skowronski*. Now that there is no longer a provision of guidelines directing Hobbs Act conspiracies to § 2B3.1, they are covered by the conspiracy guideline, § 2X1.1.

*Amato*, 46 F.3d at 1261.

(E.D.Pa. May 22, 1997) (unpublished opinion) (declining to apply § 2X1.1(b)(2) in analogous context where defendant convicted of money laundering and conspiracy to commit money laundering was sentenced under USSG § 2S1.1 for both offenses; however, here any error as to § 2X1.1(b)(2) would appear to have been harmless because of the effect of the grouping provisions, *see* USSG § 3D1.2(b); § 3D1.2, comment. n.4).

A review of the case law thus demonstrates that in the years since *Amato* was decided there has been no dispute that a robbery conspiracy under the Hobbs Act is to be sentenced under Guideline Section 2X1.1. The same body of post-*Amato* case law reveals that the "offense language theory" has been abandoned in the interpretation of that section. For example, in *Goldberg,* the Second Circuit, discussing its decision in *Amato,* explained:

> [In *Amato* ] a different panel of this Court [than the panel that decided *Skowronski* ] concluded that the "determinative passage in § 2X1.1(c)(1) makes this turn not on the content of the criminal statute in question, but rather on whether the Guidelines assign the particular class of conspiracy to a

section other than the general conspiracy section."

*Goldberg,* 1997 WL 218784, at *1 (quoting *Amato,* 46 F.3d at 1261).

Although the Guideline issue raised in this case has not been addressed in a reported decision of our Court of Appeals, our review of the pertinent Guideline sections and related materials leads us to conclude that the Third Circuit would reach the same conclusion as did the Second Circuit in *Amato,* either on the reasoning relied upon there or upon its own interpretive analysis.[12] Our conclusion on this point would likely have been the same at the time of petitioner's sentencing, if defense counsel had raised the issue for resolution at that time. Therefore, it appears that petitioner has met his burden of showing deficient representation under the first prong of *Strickland. See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To be sure, if there was error on the part of defense counsel in this respect, it was shared by all parties, the Probation Office and this Court. However, that fact should have no bearing upon petitioner's right to relief if such right exists.

12. If the Court of Appeals for the Third Circuit were to address this issue, we suggest that it might determine that a more correct analysis, leading to the same result, would be as follows. We believe that a plain reading of the relevant Guideline sections, both before and after the 1993 amendments, supports the conclusion that § 2X1.1 governs sentencing of a Hobbs Act conspiracy conviction under 18 U.S.C. § 1951. Section 2X1.1, both before and after 1993, provides in part that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." USSG § 2X1.1(c)(1). All other conspiracies are covered by § 2X1.1. The Commentary to that section identifies offense guidelines that expressly cover conspiracies. § 2X1.1, comment. (n.1). When § 2E1.5 existed, prior to its deletion by Amendment 481, it referred Hobbs Act violations to the following sections: § 2B3.1 (robbery), § 2B3.2 (extortion), § 2B3.3 (blackmail), or § 2C1.1 (bribe or official extortion), as applicable. When § 2E1.5 was deleted, the Statutory Index was correspondingly amended in the line referenced for 18 U.S.C. § 1951 by deleting "2E1.5" and inserting in lieu thereof "2B3.1, 2B3.2, 2B3.3, 2C1.1." USSG App. C, amend. 496 (Nov. 1, 1993). That same amendment made numerous changes to the Commentary to § 2X1.1. *Id.* Significantly, however, that Commentary never identified either § 2E1.5 or §§ 2B3.1, 2B3.2, 2B3.3 or 2C1.1 as offense guidelines expressly covering conspiracies, either before or after the 1993 amendments. *Compare* USSG § 2X1.1, comment. (Nov.1992) *with* USSG § 2X1.1, comment. (Nov.1993). Furthermore, each of the Guidelines sections which is listed in that portion of the Commentary has the express word "conspiracy" in its title or commentary. *See Demory,* 1994 WL 421123, at *7 n. 2. Moreover, although the *Amato* court appeared to treat the deletion of § 2E1.5 by Amendment 481 to be a substantive change rather than merely "clarifying," *see DiSomma,* 1996 WL 517662, at *3, it appears to us to be in the nature of a "housekeeping" revision, to eliminate duplication, rather than any change in the policy of that area of the Guidelines. Our impression in this respect appears to be supported by the comments found in the Sentencing Commission's report submitted to Congress concerning the proposed 1993 amendments to the Guidelines. 58 Fed.Reg. 27148, 27153 (submitted May 6, 1993). For these reasons, we believe that *Skowronski* was an incorrect interpretation of Section 2X1.1 when it was decided, and that *Amato* "solved" that dilemma by reaching the right result, albeit for a reason which was contrived at best, and possibly erroneous.

The second part of the *Strickland* test requires that petitioner also demonstrate prejudice, defined as a likelihood that but for the error(s) of counsel, the result of the proceeding would have been different. *Id.* In this case, if petitioner were to be sentenced as provided in § 2X1.1, his base offense level would be that of the Guideline for the substantive offense under § 2B3.1, plus any permitted upward adjustments under § 2X1.1(a). Petitioner's Presentence Investigation Report recommended, and the parties and the Court agreed, that the calculation under § 2B3.1 (without reference to § 2X1.1) produced a base offense level of 20, with no upward adjustments. (PSR ¶¶ 31–36.) The calculation of base offense level under § 2X1.1(a) would likely produce the same total, based on the offense conduct here. At that point petitioner would be entitled to advocate for the three-level downward adjustment under § 2X1.1(b)(2), and based on the facts of record he would have a good argument favoring that adjustment. *See, e.g., United States v. Medina,* 74 F.3d 413, 417–19 (2d Cir.1996) (citing and discussing cases addressing the § 2X1.1(b)(2) adjustment under various circumstances).

If the three-point adjustment were granted, the resulting total offense level would be reduced from 20 to 17, and the corresponding range for imprisonment (in criminal history category I) would be 24 to 30 months rather than the original 33 to 40 month range. *See* USSG Ch., 5 Pt. A (sentencing table). Clearly, such a reduced guideline range would have a significant effect upon petitioner's resulting sentence. Therefore, it also appears that he has satisfied the second prong required under *Strickland. Id.*

### D. *Procedure under 28 U.S.C. § 2255*

Petitioner, proceeding *pro se* and assisted by an inmate paralegal, cited and discussed the *Amato* line of cases only upon the filing of his Reply Brief, after the government had provided its Answer and Brief in Opposition to the § 2255 motion. (Pet. Br. at 7–8.) Therefore, no further response from the government was required. It would seem appropriate, however, to give the government a fair opportunity to consider the views which

we have expressed in this opinion and to present oral argument, if it requests. In the same light we also deem it prudent to appoint counsel to represent petitioner in any further proceedings on the matter in this Court, if petitioner would so request. Thus if the relief which he seeks is granted, we would anticipate not an evidentiary hearing but an abbreviated resentencing hearing at which the underlying facts would be addressed and he would have representation. *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(c) (appointment of counsel).

### CONCLUSION

For the reasons stated, the Court will conduct further proceedings as set forth above. An appropriate order adjudicating petitioner's motion under 18 U.S.C. § 2255 will be entered upon the completion of those proceedings.